IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARRYL GARNER, ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 12-5258 |
| VIST BANK d/b/a | : | |
| VIST FINANCIAL | : | |

**SURRICK, J.**                                                          **DECEMBER 20, 2013**

## MEMORANDUM

Presently before the Court is Defendant VIST Financial Corporation's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6).  (ECF No. 12.)  For the following reasons, Defendant's Motion will be denied.

**I.      BACKGROUND**

Plaintiff Darryl Garner ("Garner"), on behalf of himself and others similarly situated and, Plaintiff Blind Ambitions Groups ("Blind Ambitions"), on behalf of its members and all others similarly situated, bring this action against VIST Financial Corporation ("Defendant"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, (the "ADA").

Garner was born and raised in the City of Philadelphia.  (Am. Compl. ¶ 1, ECF No. 10.) He moved from Philadelphia in 1986 but continued to travel there on a daily basis as he was employed in West Philadelphia.  (*Id.* at ¶ 2.)  Most of his family still lives in Philadelphia, so he travels to Philadelphia at least once a month, but sometimes as often as once a week.  (*Id.* at ¶¶ 5-6.)  Garner lost his vision in 2009 due to diabetic retinopathy.  (*Id.* at ¶ 4.)  After Garner lost his vision, he had to stop working in Philadelphia.  (*Id.* at ¶¶ 3-4.)  Garner is an active member of

Blind Ambitions, which provides educational support to the blind community, including advocacy for accessibility to goods and services.  (*Id.* at ¶ 7.)  Throughout his daily business, Garner uses banking services through ATMs, provided that the ATMs are accessible to the blind. (*Id.* at ¶ 8.)  If an ATM is not accessible to the blind, Garner cannot use the ATM independently, but has to divulge private banking information to a third party to successfully use the ATM.  (*Id.* at ¶ 9.)

Garner alleges that sometime after March 15, 2012, he visited an ATM owned and operated by Defendant, located at 36 North 3rd Street, Philadelphia, PA 19106 (the "Subject ATM").  (*Id.* at ¶¶ 15, 46.)  At the time of Garner's visit to the Subject ATM, there was no functional voice-guidance feature, and there were no features to provide blind and visually-impaired users with the same level of privacy of input and output that is provided for sighted individuals.  (*Id.* at ¶ 47.)  Garner is routinely in the immediate vicinity of the Subject ATM and has been unable to use it because it did not have a working voice-guidance feature.  (*Id.* at ¶¶ 50, 52.)  He will continue to attempt to use the Subject ATM because he wants to identify convenient-accessible ATM options within the geographic zone that he usually travels as part of his daily and weekly activities.  (*Id.* at ¶ 55.)  Garner alleges that once he discovered that the Subject ATM lacked accessibility for the visually impaired, he caused an investigation to be undertaken that revealed that "other ATM machines in Defendant's ATM network are in violation of Chapter 707 of the 2010 Standards."  (*Id.* at ¶ 48.)  Garner further alleges that Defendant has centralized policies regarding the management and operation of its ATMs, but Defendant does not have a plan or policy that provides for its ATMs to timely comply with Chapter 7 of the 2010 Standards for Accessible Design (the "2010 Standards").  (*Id.* at ¶ 49.)

2

Garner filed the original complaint on September 13, 2012, seeking injunctive and declaratory relief.  (Compl., ECF No. 1.)  On December 3, 2012, an Amended Complaint was filed, adding Blind Ambitions as a Plaintiff.  (Am. Compl.)  In the Amended Complaint, Plaintiffs allege that Defendant is in violation of Title III of the ADA because the Subject ATM is inaccessible to the blind.  (*Id.* at ¶¶ 15, 17.)  Plaintiffs also allege that Defendant's entire network of ATMs does not comply with the 2010 Standards.  (*Id.* at ¶ 48.)  Plaintiffs seek class certification to challenge Defendant's alleged system-wide ADA violations, a declaration that Defendant's ATMs violate federal law, and an injunction requiring Defendant to update or replace its ATMs so that they are fully accessible to and independently usable by blind individuals.  (*Id.* at ¶ 18.)  Defendant filed a Motion to Dismiss the Amended Complaint on December 14, 2012.  (Def's Mot., ECF No. 12.)  Plaintiffs filed a Response in Opposition to the Motion on January 4, 2013. (Pl.'s Opp'n, ECF No. 16.)

## II.     LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering such a motion, the district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party."  *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Allegations that constitute legal conclusions are "not entitled to the assumption of truth" and must be discounted by the Court.  *Iqbal,* 556 U.S. at 679.  A complaint that only alleges entitlement to relief but does not allege any facts to show this entitlement must be

3

dismissed. *Grant Mfg. & Alloying, Inc. v. Recycle is Good LLC,* No. 11-3115, 2012 WL 3205514, at *3 (E.D. Pa. Aug. 7, 2012).  However, a complaint should not be dismissed just because it seems implausible that the plaintiff can prove those facts. *Leisure v. Pa. Dept. of Child Youth Servs.,* No. 10-07565, 2012 WL 1080142, at *2 (E.D. Pa. Mar. 30, 2012).

## III.   DISCUSSION

Title III of the ADA proscribes discrimination by places of public accommodation, and provides as follows:  "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

In support of its Motion, Defendant argues that Plaintiffs' Amended Complaint is deficient and must be dismissed.  Specifically, Defendant contends that Plaintiffs' allegations of temporary technological malfunctions of the Subject ATM are not sufficient to support their claim for injunctive relief under the ADA.  Defendant also contends that Garner and Blind Ambitions each lack standing to bring this lawsuit.  In response, Plaintiffs argue that they have sufficiently pled a discrimination claim under the ADA, and that both Garner and Blind Ambitions have standing.

### A.   Discrimination Claim Under the ADA

Defendant first argues that Plaintiffs have failed to adequately plead that Defendant discriminated against Garner on the basis of his disability because Plaintiffs' claim is based on Garner visiting one ATM that was temporarily malfunctioning on one occasion.  To establish a prima facie case of discrimination under the ADA, a plaintiff must prove that:  (1) he was discriminated against on the basis of disability; (2) in the full and equal enjoyment of the goods,

services, facilities, privileges, advantages or accommodations of any place of public accommodation; (3) by any person who owns or operates a place of public accommodation.  42 U.S.C. § 12182(a); *see Reviello v. Phila. Fed. Credit Union*, No. 12-508, 2012 WL 2196320 (E.D. Pa. June 14, 2012).

Defendant argues that Plaintiffs cannot establish a prima facie discrimination case because temporary malfunctions of voice-guidance features are not a basis for a discrimination claim under the ADA.  Defendant claims that the Subject ATM was equipped with the required voice-guidance and privacy functions a year before Garner's visit.  Defendant also claims that after receiving Garner's initial complaint, Defendant had the Subject ATM inspected within a week, and all features were found to be functioning properly.  (Def.'s Mot. 8.)  Thus, according to Defendant, Garner experienced a temporary malfunction in the voice-guidance features on the Subject ATM, and this type of temporary malfunctions cannot support an ADA discrimination claim.  Plaintiffs respond that for Defendant to defend against an ADA violation based on temporary or isolated interruptions in access, Defendant must establish that the interruption was a result of maintenance and repair to the inoperable features.  Plaintiffs contend that whether there was a temporary interruption in services at the Subject ATM is a question of fact, which is not an appropriate topic for a Rule 12 motion.

Defendant is correct in its assertion that the ADA provides for an exception to liability for "isolated or temporary interruptions in service or access due to maintenance or repairs."  28 C.F.R. § 36.211(b).  However, Defendant overlooks the reality that, here, Plaintiffs have not alleged that a temporary interruption in service from maintenance or repairs occured, but instead that the Subject ATM was not equipped with functional voice-guidance features.  At this stage, we must accept Plaintiffs' allegations as true.  *DelRio-Mocci v. Connolly Props., Inc.,* 672 F.3d

241, 245 (3d Cir. 2012).  Therefore, we cannot make a factual determination as to whether the Subject ATM experienced an isolated or temporary malfunction.  *Klaus v. Sovereign Bank, Nat'l Assoc.*, No. 12-2421, 2013 WL 2040334, at *6 (M.D. Pa. Apr. 11, 2013) ("[C]ourts have found that whether interruptions in access are 'isolated or temporary' and thus come within the protections of 28 C.R.F. § 36.211, present questions of fact that are not properly subject to disposition though a motion under rule 12(b)(6).").  Since we are unable to make such a determination, we cannot find that the ADA's exception for temporary malfunctions applies.

Contrary to Defendant's contention, Garner has sufficiently pled a prima facie case of discrimination under the ADA.  He is a blind individual and thus he is disabled.  He claims that he was discriminated against on the basis of his disability because he was not able to use Defendant's ATM as a seeing individual would.  Garner claims that Defendant's ATM was not equipped with functional voice-guidance to enable the visually impaired to protect their privacy information while using the ATM.  Moreover, Garner claims that Defendant owns the Subject ATM as well as others in its network, all of which are places of public accommodation that are intended to be used by all individuals and that affect commerce through their operations.  42 U.S.C. § 12181(2).  Since Garner has alleged that he was discriminated against because of his disability by a place of public accommodation, he has adequately pled a claim upon which relief could be granted under the ADA.

**B.   Plaintiff Garner's Standing**

Defendant next argues that Garner lacks standing to bring this lawsuit because Garner has not met the standing requirements under Title III of the ADA.  Defendant specifically argues that Garner is a tester plaintiff who does not have standing to seek injunctive relief because he cannot sufficiently allege an injury in fact under the "proximity test."  (Def.'s Mot. 13.)  In response,

Garner argues that he has sufficiently alleged an injury by showing he has an intent to return to the Subject ATM and has been deterred from using the Subject ATM.   In addition, he argues that he has standing as a tester plaintiff because he is a regular patron of Defendant's ATMs.

The constitutional minimum of standing has three elements.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  First, the plaintiff must have suffered an injury in fact of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.*  Second, there must be a causal connection between the plaintiff's injury and the defendant's conduct.  *Id.*  Third, it must be likely that the injury will be "redressed by a favorable decision."  *Id.*  (citing *Simon v. E. Ky. Welfare Rights Org.,* 426 U.S. 26, 38 (1976)).  The plaintiff bears the burden of establishing the three elements of standing since the plaintiff is the party invoking federal jurisdiction.  *Id.* at 560.  At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice because, for a motion to dismiss, it is presumed "'that general allegations embrace those specific facts that are necessary to support the claim.'"  *Harty v. Burlington Coat Factory of Pa., LLC,* No. 11-1923, 2011 WL 2415169, at *3 (E.D. Pa. June 16, 2011) (quoting *Lujan,* 504 U.S. at 561).

At issue is whether Garner has satisfied the first requirement for standing, an injury in fact.  Because Garner seeks injunctive relief, he must show a real and immediate threat of injury to satisfy the injury in fact requirement.  *City of L.A. v. Lyons,* 461 U.S. 95, 101-02 (1983); *Harty,* 2011 WL 2415169 at *3.  There are two different methods that Garner can use to meet his burden of showing a sufficient imminent injury in fact to support injunctive relief:  the intent to return method and the deterrent effect doctrine.

### 1.   Intent to Return Method

A plaintiff who has been discriminated against under the ADA can show that he or she faces an imminent injury in fact by showing that he or she has an intent to return to the place where the alleged discrimination took place and that upon such return, the same alleged discrimination will occur again. *Klaus v. Jonestown Bank & Trust Co. of Jonestown,* No. 1-24884, 2013 WL 4079946, at *5 (M.D. Pa. Aug. 13, 2013). This "intent to return" method requires a showing that: (1) the plaintiff has alleged that the defendant engaged in past discriminatory conduct that violates the ADA; (2) it is reasonable to infer from allegations in the complaint that the discriminatory conduct will continue; and (3) it is reasonable to infer based on past patronage, proximity of the public accommodation to the plaintiff's home, business, or personal connections to the area, that the plaintiff intends to return to the public accommodation in the future. *Chapman v. Pier 1 Imports (U.S.), Inc.*, 870 F. Supp. 2d 995, 949 (E.D. Cal. 2012); *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008); *Jonestown Bank*, 2013 WL 4079946, at *5.

Here, Garner has sufficiently alleged an injury in fact under the intent to return method. Garner alleges that Defendant engaged in discriminatory conduct by not having functioning voice-guidance features on the Subject ATM. It is reasonable to infer that the discriminatory conduct will continue because Plaintiffs allege that Defendant does not have a plan or policy to cause its ATMs to become compliant with the 2010 Standards. Finally, it is reasonable to infer that Garner will return to the Subject ATM in the future because Garner claims that he has a personal connection to the area in that his family lives in the area and he frequently visits the area as often as once a week. Garner has thus established that he has an adequate intent to return to the Subject ATM, and that when he does return, he is going to face the same discrimination of

not being able to independently use the ATM.  As such, Defendant faces an imminent injury in fact that gives him standing to seek an injunction to correct the discriminatory behavior.

Defendant has pointed to a line of district court cases in the Third Circuit that have taken the intent to return method one step further by requiring a plaintiff to show a specific intent to return to the noncompliant accommodation.  *Jonestown Bank*, 2013 WL 4079946, at \*5; *Harty*, 2011 WL 2415169, at \*5; *Reviello,* 2012 WL 2196320, at \*4; *Dempsey v. Pistol Pete's Beef N Beer*, No. 8-5454, 2009 WL 3584597, at \*4 (D.N.J. Oct. 26, 2009); *Access 4 All, Inc. v. 539 Absecon Boulevard, LLC*, No. 5-5624, 2006 WL 1804578, at \*3 (D.N.J. June 26, 2006).  These courts have used a four factor "proximity test" to determine if specific intent exists that looks at: (1) plaintiff's proximity to the defendant's place of public accommodation; (2) plaintiff's past patronage; (3) definitiveness of plaintiff's plan to return; and (4) plaintiff's frequency of nearby travel.  *Harty*, 2011 WL 2415169, at \*5; *Reviello,* 2012 WL 2196320, at \*4; *Dempsey*, 2009 WL 3584597, at \*4; *Access 4 All, Inc.*, 2006 WL 1804578, at \*3; *see Davis v. Am. Nat'l Bank of Tex.,* No. 4-382, 2012 WL 7801700, at \*6 (E.D. Tex. Dec. 11, 2012); *Hunter v. First United Bank & Trust Co.,* No. 4-374, 2012 WL 7004154, at \*5 (E.D. Tex. Dec. 11, 2012).  This test has not been adopted by the Third Circuit, and not all district courts in the Third Circuit have used it in determining ADA standing.  *See Clark v. McDonald's Corp.,* 213 F.R.D. 198, 229 (D.N.J. 2003); *Krazter v. Gamma Mgmt. Grp., Inc.,* No. 4-6031, 2005 WL 2644996, at \*3 (E.D. Pa. Oct. 12, 2005).  In addition, this test has faced criticism for being too stringent.  *See Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 703-05 (W.D. Tex. 2010) (discussing criticisms of specific intent to return test).  It is unnecessary for us to decide whether this more narrow test should be applied here, however, because even if Garner failed to show a specific intent to return by satisfying the proximity test, he will still have standing under the deterrent effect doctrine.

2.      *Deterrent Effect Doctrine*

The alternative method of showing an injury in fact to support injunctive relief is referred to as the deterrent effect test.  *Jonestown Bank*, 2013 WL 4079946, at *5; *see Chapman*, 631 F.3d at 950; *Disabled Am. for Equal Access, Inc. v. Ferries Del Caribe, Inc.*, 405 F.3d 60, 64 (1st Cir. 2005); *Betancourt*, 732 F. Supp. 2d at 708-09; *McDonald's Corp.*, 213 F.R.D. at 229.  Under the deterrent effect test, a plaintiff is considered to have suffered an actual injury when he or she is deterred from patronizing a public accommodation because of accessibility barriers.  *See Chapman*, 631 F.3d at 950; *Disabled Am. for Equal Access, Inc.*, 405 F.3d at 64-65.  To satisfy this test, a plaintiff must show that he or she has actual knowledge of barriers preventing equal access and a reasonable likelihood that the plaintiff would use the facility if not for the barriers. *Krazter*, 2005 WL 2644996, at *3 (finding the plaintiffs had standing when they alleged that they personally visited public accommodation, had desire to visit it again, and provided specific information about ADA violations); *McDonald's Corp.*, 213 F.R.D. at 229 (holding that "deterrence from visiting a place of public accommodation known to be out-of-compliance with the ADA can constitute an actual and present injury as surely as tomorrow's visit to the same location can constitute a threatened and imminent one."); *see also Doran v. 7-Eleven, Inc.,* 524 F.3d 1034, 1041 (9th Cir. 2008) (finding the plaintiff who had actual knowledge of the barriers at defendant's store and was deterred from visiting store until the ADA violation was remedied demonstrated actual injury in fact and threat of future harm).

The deterrent effect method of establishing standing is based on the notion that a disabled plaintiff suffers an injury under the ADA not only when he faces a barrier while visiting a defendant's place of public accommodation but also when he is denied the opportunity to avail himself of the goods and services at the defendant's entity.  This rationale is consistent with the

language of the ADA and with Supreme Court precedent.  For instance, the ADA "expressly contemplates loss of opportunity as an actionable injury." *Betancourt,* 732 F. Supp. 2d at 707 (citing 42 U.S.C. § 1282(a), (b)).  In addition, Title III explicitly does not require "a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply [with Title III of the ADA]." *Id.* at 701 (quoting § 12188(a)(2)).  The Supreme Court has also supported a broad approach of showing an injury in fact in Title III ADA cases.  *Doran,* 524 F.3d at 1039 ("The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'") (quoting *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205 (1972)); *see Bragdon v. Abbott,* 524 U.S. 624 (1998) (finding that to obtain relief under Title III of the ADA, the plaintiff did not have to show a specific date on which she would return to the defendant's dental clinic); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 184-85 (2000) (finding injury in fact when plaintiffs showed that they were deterred from swimming in defendant's river as long as there were pollutants in it).

In this case, Garner has alleged that he has suffered an actual injury in fact because he is deterred from using the Subject ATM.  He alleges that he discovered that the Subject ATM was not accessible to the blind when he attempted to use it but was unable to because it lacked functional voice-guidance features.  Garner further alleges that if the Subject ATM was accessible to him, it is reasonably likely that he would use it because he claims that the Subject ATM is conveniently located in an area where he frequently travels and he wants to use accessible ATMs that are convenient.  Thus, Garner has sufficiently alleged that he is being denied the opportunity to use the Subject ATM because it is not accessible to the blind.

11

Accordingly, the inaccessibility of the Subject ATM has caused an actual injury in fact such that Garner has standing to seek an injunction so that the discrimination is remedied and he is no longer deterred from using the Subject ATM.

3.      *Standing of Testers*

Defendant's final standing argument related to Garner is that he cannot establish an injury in fact because he is an ADA tester. Garner alleges that he visited the Subject ATM as a customer, not as a tester. At this stage, we must accept that allegation as true. Therefore, we cannot find that Garner was a tester whose sole motivation was to inspect for ADA compliance. At most, we could find that Garner visited the Subject ATM with mixed motives of attempting to avail himself to the services provided by the ATM machine and verifying ADA compliance. The existence of such mixed motives has not been found to affect standing that would otherwise exist. *McDonald's Corp.*, 213 F.R.D. at 227-28; *see Harty*, 2011 WL 2415169, at *8. In any event, even if Garner was a tester, his status as a tester would not automatically preclude him from having standing. *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323,1332-34 (11th Cir. 2013) (finding the plaintiff's tester motive behind his visit to supermarket did not foreclose standing for his claim under Title III of the ADA); *Jonestown Bank*, 2013 WL 4079946, at *7 (citing a collection of cases that found the status of an ADA tester does not preclude standing).

C.      **Standing of Blind Ambitions**

Defendant argues that Blind Ambitions does not have associational standing because finding an ADA violation here requires the participation of individual members of Blind

12

Ambitions.[1]  Blind Ambitions responds that the claim does not require the participation of its individual members because injunctive relief is being sought.

An organization has associational standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interest it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n.,* 432 U.S. 333, 343 (1977).  Pursuant to the first prong of the test for associational standing, courts analyze whether individual members, on whose behalf the suit is brought, would have Article III standing if they brought the suit individually. *Liberty Res., Inc. v. Phila. Hous. Auth.,* 528 F. Supp. 2d 553, 563 (E.D. Pa. 2007); *see Disabled Patriots of Am., Inc. v. City of Trenton*, No. 07-3165, 2008 WL 4416459, at *7 (D.N.J. Sept. 24, 2008). Here, Garner has demonstrated that he has standing to bring this claim on his own.  Therefore, Blind Ambitions has met the first requirement of associational standing because one of its members, Garner, has standing to sue individually.

Whether Blind Ambitions meets the second prong of the test hinges on whether the interests that Blind Ambitions seeks to protect in bringing this suit are "germane" to its purpose. *Hunt,* 432 U.S. at 343; *see also Disabled Patriots of Am., Inc.,* 2008 WL 4416459, at *7. According to the Amended Complaint, the alleged purpose of the organization is to "ensure that persons with visual impairments have access to and do not encounter discrimination at places of public accommodation."  (Am. Compl. ¶ 23.)  This lawsuit deals with blind individuals having access to public ATMs, which falls directly in line with Blind Ambitions stated purpose.  Thus,

---

[1] Defendant also argues that Blind Ambitions lacks organizational standing because Blind Ambitions has not incurred an injury.  Plaintiff has conceded this point.  (Pl.'s Opp'n 19 n.12.)

the present suit is germane to Blind Ambitions's basic principles.  The second prong of the test for associational standing is met.

With regard to the third prong of the test for associational standing, courts consider whether the claim made by the organization requires participation of its individual members. This prong of the test is a prudential consideration that is not mandated by Article III of the Constitution.  *United Food & Commercial Workers Union Local 751 v. Brown Grp.*, 517 U.S. 544, 556-57 (1996).  Under this prong, "it is usually the case 'that requests by an association for declaratory and injunctive relief do not require participation by individual association members.'"  *McDonald's Corp.*, 213 F.R.D. at 213 (quoting *Hosp. Council of W. Pa. v. City of Pittsburg*, 949 F.2d 83, 89 (3d Cir. 1991)).  And even if some individual participation is required, it "does not necessarily bar associational standing. . . ."  *Pa. Psychiatric Soc. v. Green Spring Health Servs., Inc.,* 280 F.3d 278, 283 (3d Cir. 2000).  At the motion to dismiss stage, an association's claim should be permitted to go forward so that the association has an opportunity to attempt an approach to the litigation in a way that requires limited participation of individual members.  *See McDonald's Corp.*, 213 F.R.D. at 213-15 (citing *Green Spring Health Servs., Inc.*, 280 F.3d at 286).  In the instant matter, Blind Ambitions seeks a declaratory judgment that Defendant was in violation of the 2010 Standards and a permanent injunction directing Defendant to take necessary steps to bring its ATMs into compliance with the 2010 Standards. On the face of the Amended Complaint, it does not appear that Blind Ambitions will need more than some limited participation by its members to prove its claims.  Therefore, at this stage, Blind Ambitions will not be denied associational standing on the basis of failing to meet the third prong of the associational standing test.  Rather, Blind Ambitions will be given the opportunity to litigate its claim with limited participation from its members.

14

**D.      Limiting Garner's Standing to the Subject ATM**

Defendant's final argument is that the scope of Garner's standing should be limited to the Subject ATM.  Defendant claims that a limited scope is justified because Garner does not claim to have visited any of Defendant's other ATMs nor specify the location of or ADA violations at these other ATMs.  In response, Garner does not contend that he has individual standing to challenge ADA violations at the other ATMs in Defendant's network.  Rather, he claims that he does not need individual standing as to the other ATMs because this is a class action, and it is sufficient that he has individual standing as to the Subject ATM.

Once an individual plaintiff who seeks to represent a class has alleged facts that establish standing under the Constitution, the Court must look to Federal Rule of Civil Procedure 23 to determine if the named plaintiff can adequately represent the rights of the class members.  *See Goodman v. Lukens Steel Co.*, 777 F.2d 113, 122 (3d Cir. 1985); *see also Sosna v. Iowa*, 419 U.S. 393, 403 (1975) (finding that the conclusion that the named plaintiff in a class action is "real and immediate" "does not automatically establish that appellant is entitled to litigate the interest of the class she seeks to represent, but it does shift the focus of examination from  the elements of justicablity to the ability of the named representative to 'fairly and adequately protect the interests of the class.'") (quoting Fed. R. Civ. P. 23); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("Once his standing has been established, whether a plaintiff will be able to represent the putative class, including absent class members, depends solely on whether he is able to meet the additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure.").  Thus, in Rule 23 class actions cases, a plaintiff need only establish individual standing prior to a motion for class certification.  *Indergit v. Rite Aid Corp.*, No. 08-9361, 2009 WL 1269250, at *5 (S.D.N.Y May 4, 2009) (collecting cases that held named class

action plaintiff needs only individual standing to have standing in class action).  Beyond establishing individual standing, there is "'no further separate class standing requirement in the constitutional sense.'"  *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 307 (3d Cir. 1998) (quoting Newberg on Class Actions § 2.05 at 2-29 (3d Ed. 1992)).

Here, Defendant's argument confuses the issues of individual standing with the secondary issue of class certification under Rule 23.  Garner has asserted a class action suit challenging Defendant's system-wide failure to comply with the 2010 Standards of the ADA.  Because this is a class action under Rule 23, at this stage, Garner is required only to show that he has individual standing to bring his claim with respect to the Subject ATM, which he has done.  The issue as to whether Garner can properly challenge Defendant's polices as they apply to Defendant's entire ATM system as a named plaintiff in a class action is not an issue of standing, but one of class certification.  As such, this issue should be resolved at the class certification stage of the litigation.  *See Ramierz v. STi Prepaid LLC*, 644 F. Supp. 2d 496, 505-06 (D.N.J. 2009).  In rejecting Defendant's argument, we note that Defendant was incorrect in relying on *Marcovecchio v. Commerce Bancorp, Inc.*, No. 03-1122, 2005 WL 159596 (D.N.J Jan. 25, 2005) to support its argument that the scope of Garner's standing should be limited.  *Marcovecchio* dealt with a summary judgment motion that did not involve Rule 23 class actions, making it inapplicable to the issues currently before the Court.

16

**IV.      CONCLUSION**

  For the foregoing reasons, Defendant VIST Financial Corporation's Motion to Dismiss will be denied.  An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**
